**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**DEBRA MARR WEST,**

    **Plaintiff,**

v.                                                             Case No.: 8:15-cv-2684-T-33AAS

**CAROLYN W. COLVIN,**
**Acting Commissioner of Social**
**Security Administration,**

    **Defendant.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to the Social Security Act ("the Act"), as amended, Title 42, United States Code, Section 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claims for a period of disability and Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").

After reviewing the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the administrative record, and the pleadings and memoranda submitted by the parties in this case, the Court recommends affirming the Commissioner's decision and dismissing this case.

**I.  PROCEDURAL HISTORY**

Plaintiff Debra Marr West filed a Title II application for a period of disability and DIB and a Title XVI application for SSI on September 8, 2011, alleging disability beginning August 7, 2010. (Tr. 23). Plaintiff's applications were denied initially and on reconsideration. (Tr. 103-04, 115-16). At her request, Plaintiff received a hearing before an ALJ, which occurred on August 28, 2013. (Tr. 23, 45-62). A supplemental hearing was held on April 29, 2014. (Tr. 23, 63-92). On

1

August 7, 2014, the ALJ issued an opinion finding Plaintiff was not disabled. (Tr. 23-36). The Appeals Council granted Plaintiff's request for review, but adopted most of the ALJ's findings (Tr. 4-7).[1] Plaintiff timely filed her Complaint in this Court for review of the Commissioner's decision. (Doc. 1).

## II.   NATURE OF DISABILITY CLAIM

### A.   Statement of the Case

Plaintiff was forty-six years old at the time of the ALJ's decision. (Tr. 35). Plaintiff has a limited education and has past relevant work as a restaurant manager, waitress, and nurse instructor. (Tr. 34-35, 83).

### B.   Summary of the ALJ's Decision

The Commissioner concluded that Plaintiff met the insured status requirements through December 31, 2014 (Tr. 5),[2] and the ALJ determined that Plaintiff had not engaged in substantial gainful activity since August 7, 2010, the alleged onset date (Tr. 25). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: degenerative disc disease (DDD) of the lumbar spine, diabetes mellitus, peripheral neuropathy, morbid obesity, chronic obstructive pulmonary disease (COPD), and hypertension. (Tr. 25-26). Plaintiff also had non-severe impairments of chronic venous insufficiency, hepatitis B, chronic heart failure, depression, anxiety, and history of opiate addiction. (Tr. 26).[3]

---

[1] The Appeals Council did not agree with the ALJ's decision as to Plaintiff's date last insured or the reason for the supplemental hearing. (Tr. 5).
[2] Although the ALJ determined that Plaintiff met the insured status requirements through December 31, 2012, the Appeals Council found Plaintiff's date last insured was December 31, 2014. (Tr. 5).
[3] The ALJ also noted that she considered Plaintiff's allegations of severe fatigue, foot infections, lower extremity cellulitis, and bilateral lymphedema in conjunction with Plaintiff's severe impairment of diabetes mellitus. (Tr. 26).

Notwithstanding these impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). (Tr. 27-28).

The ALJ then concluded that Plaintiff retained the residual functional capacity ("RFC") to:

> Perform sedentary work . . . except that [Plaintiff] can stand/walk for four hours in an eight-hour day; can occasionally push/pull with foot controls; can occasionally climb ramps and stairs; can never climb ladders, ropes, or scaffolds; can frequently balance; can occasionally stoop, kneel, crouch, and crawl; must avoid even moderate exposure to fumes, odors, dusts, gases, and poor ventilation; and must avoid concentrated exposure to humidity, vibration, moving mechanical parts, and unprotected heights.

(Tr. 28). Based upon this RFC, as well as testimony from a vocational expert ("VE"), the ALJ determined Plaintiff could not perform her past relevant work. (Tr. 34-35). However, the ALJ determined that Plaintiff was capable of performing jobs available in significant numbers in the national economy, such as call-out operator, document preparer, and charge account clerk. (Tr. 35-36, 86-87). Accordingly, the ALJ found Plaintiff was not disabled. (Tr. 36).

### III.   ANALYSIS

#### A.   The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen,* 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales,* 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater,* 67

F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker,* 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales,* 402 U.S. 389, 401 (1971)).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart,* 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted); *Dyer v. Barnhart,* 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote,* 67 F.3d at 1560; *accord Lowery v. Sullivan,* 979 F.2d 835, 837 (11th Cir. 1992) (the court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, if a claimant does not have any impairment or combination of impairments that significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c); *see also Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings" or "Appendix 1"), she is disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e). Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g).

### B.      Issues on Appeal

Plaintiff contends that: (1) the ALJ failed to properly evaluate the opinion of her treating physician Arshad Mahar, M.D. ("Dr. Mahar"); (2) the ALJ failed to properly evaluate Plaintiff's credibility; and (3) the ALJ mischaracterized the record, warranting remand to a different ALJ.[4]

#### 1.      **Medical Opinion Evidence**

Plaintiff asserts that the ALJ erred in giving the opinion of Dr. Mahar little weight. (Tr. 34). In August 2013, using a check-box form, Dr. Mahar opined that Plaintiff satisfied the requirements for each of the following listings: 1.04 (Disorders of the Spine), 3.02 (Chronic Respiratory Disorders), 4.02 (Chronic Heart Failure), 9.05 (Diabetes Mellitus), 11.14 (Peripheral Neuropathy). (Tr. 33-34, 483-91). Dr. Mahar also opined that Plaintiff could occasionally lift more than fifty pounds, could sit for six hours in an eight hour work day, could stand/walk up to twenty[5] minutes every two hours, and could perform all postural activities (climbing, balancing, stooping, bending, kneeling, crouching, and crawling) and manipulative activities (reaching, handling, fingering, and feeling) less than one-third of the workday. (Tr. 34, 480).

In August 2014, using another check-box form, Dr. Mahar reiterated his findings regarding the listings satisfied by Plaintiff. (Tr. 34, 609-17). Dr. Mahar also opined that Plaintiff could occasionally lift only ten to twenty pounds, could stand/walk for less than two hours in an eight hour workday, and could sit for less than two hours in an eight hour workday. (Tr. 34, 607). Dr. Mahar again opined that Plaintiff could perform all postural and manipulative activities less than one-third of the workday. (Tr. 607).

---

[4] The Court will address the issues presented in the order of the sequential review process for disability claims, not the order presented in Plaintiff's memorandum of law.

[5] While the ALJ recounted that Dr. Mahar found Plaintiff could stand/walk for thirty minutes every two hours, review of the record shows Dr. Mahar actually opined Plaintiff could stand/walk for only twenty minutes every two hours. (Tr. 34, 480).

5

In evaluating the medical opinions of record, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).  "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); *Winschel*, 631 F.3d at 1178-79.

In the Eleventh Circuit, a treating physician's opinion must be given substantial weight. *Phillips*, 357 F.3d at 1240.  Refusal to give a treating physician's opinion substantial weight requires that the Commissioner show good cause. *Id.* at 1240-41;  *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987).  As previously explained, an ALJ may properly discount the opinion of a treating physician if the opinion is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's own medical records. *Phillips*, 357 F.3d at 1240-41; *Lewis*, 125 F.3d at 1440.

The ALJ gave little weight to Dr. Mahar's opinions, explaining that Dr. Mahar cited no medical evidence, other than diagnoses, to support the restrictions found and included mental limitations, even though Plaintiff did not undergo mental health treatment. (Tr. 34).  However, as Plaintiff points out, Dr. Mahar did describe evidence supporting the limitations he assessed, such as shortness of breath, severe swelling of the lower extremities, and inability to bend or kneel and difficulty balancing on physical exam. (Tr. 480, 607).  Dr. Mahar also explained that Plaintiff's pain caused irritability and difficulty following instructions after assessing limitations to Plaintiff's mental functioning (reduced abilities to: concentrate; understand, remember, follow, and carry out simple instructions; use judgment; respond to supervision, coworkers, and usual work situations;

and deal with changes in a routine work setting). (Tr. 481, 608).  However, this was not the only reason cited by the ALJ for giving Dr. Mahar's opinions little weight.

The ALJ also explained that Dr. Mahar's opinions were inconsistent with the record and that the record did not demonstrate the severity of symptoms required to satisfy the listings.  The ALJ noted that, in September 2010, Plaintiff went to the ER with leg swelling and redness, but acknowledged that she had not been taking the Lasix prescribed for her edema and denied shortness of breath. (Tr. 31, 534, 536).[6] The same month, an MRI of Plaintiff's spine showed disc bulges, but no stenosis and no evidence of any nerve root or spinal cord impingement. (Tr. 31, 437-41).

In December 2010, Plaintiff presented to the emergency room with anxiety and narcotic withdrawal symptoms, but had normal physical findings, including clear lungs, normal respiratory effort, no heart murmur or rub, normal heart rate, normal heart rhythm, and no edema. (Tr. 31, 529).  The record contains little evidence of treatment in 2011, other than a hospital visit in November, where Plaintiff again exhibited edema, but could move her extremities appropriately, showed no signs of cellulitis, had intact cranial nerves, and showed no evidence of deep vein thrombosis or neurological deficit. (Tr. 31, 518-19).

In 2012, although Plaintiff had lower extremity edema and dyspnea on exertion, the ALJ found few significant medical findings related to debilitating conditions. (Tr. 32, 444-45, 449).  In November 2012, Plaintiff described her pain as a zero out of ten. (Tr. 32, 516).  Plaintiff again described her pain as a zero out of ten in February 2013 and described her pain as a three out of ten in March 2013. (Tr. 32, 502, 505).

---

[6] Although the ALJ stated that Plaintiff rated her pain a three out of ten, at least one record from Plaintiff's September 20, 2010 emergency room visit recorded her pain as a six out of ten. (Tr. 31, 536).

7

In addition, during physical examinations in 2013, Plaintiff exhibited no serious abnormalities other than pitting edema in her lower extremities and morbid obesity—her lungs were clear, she had no active pulmonary or cardiac disease and no gross musculoskeletal or focal neurological abnormalities, and she had normal respiratory effort and peripheral perfusion. (Tr. 32, 501-502, 504, 509). While Dr. Mahar reported edema and shortness of breath, he reported no musculoskeletal or neurological abnormalities, and Jason Kurecki, M.D. ("Dr. Kurecki") described Plaintiff's edema as improving and Plaintiff as "doing well." (Tr. 30-31, 32, 540, 543, 601-606). The ALJ noted that, in 2014, Plaintiff continued to have edema and was treated for a diabetic ulcer on her left toe and complaints of right foot pain, but otherwise had normal physical findings, including regular heart rate and rhythm, full range of motion, and intact neurological findings. (Tr. 32, 625-28, 634, 638-39). Additionally, the record demonstrates that Plaintiff acted as caregiver for her mother. (Tr. 33, 473)

Although Dr. Mahar's treatment records provide evidence of obesity, shortness of breath, and lower extremity edema, the Court cannot reweigh the evidence. *Phillips*, 357 F.3d at 1240 n.8. The ALJ has articulated substantial evidence for determining that Dr. Mahar's opinions are inconsistent with the record and giving his opinions little weight. Accordingly, this issue does not entitle Plaintiff to relief.

### 2. **Credibility**

Plaintiff contends the ALJ failed to provide adequate reasons for discrediting the severity of her symptoms and related limitations.

In the Eleventh Circuit, the Commissioner evaluates a claimant's testimony about subjective complaints, such as pain or other subjective symptoms, according to a three-part "pain standard." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). A plaintiff must first

demonstrate objective medical evidence of an underlying medical condition, and then demonstrate that either the objective medical evidence substantiates the severity of the pain from the condition, or the objectively determined medical condition is of sufficient severity that it would reasonably be expected to produce the pain alleged. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). A claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability. *Id.* at 1561. If the ALJ does not credit a claimant's testimony regarding subjective complaints, the ALJ must "articulate explicit and adequate reasons for doing so." *Id.* at 1561-62.

The ALJ found that Plaintiff's objective medical evidence demonstrated the presence of underlying medical conditions, including degenerative disc disease (DDD) of the lumbar spine, diabetes mellitus, peripheral neuropathy, morbid obesity, chronic obstructive pulmonary disease (COPD), and hypertension. (Tr. 25-26). However, the ALJ determined that although Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged by Plaintiff, Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible. (Tr. 29).

In making this determination, the ALJ explained that Plaintiff's noncompliance with treatment undermines her allegations of medically determining impairments and noted that Plaintiff, despite being advised to lose weight, never attempted to do so. (Tr. 30, 543).

While Plaintiff correctly points out that she testified at the supplemental hearing that she had been trying to lose weight and had lost twenty pounds (Tr. 78), this was not the only evidence of non-compliance identified by the ALJ. The ALJ also explained that Plaintiff continued to smoke, despite being advise to quit smoking (Tr. 30, 48, 53, 535, 606, 640), was not eating properly (Tr. 30, 584), and admitted that she did not take the Lasix prescribed for her edema. (Tr. 31, 534).

9

The ALJ additionally noted that Plaintiff "routinely allowed herself to run out" of medication. (Tr. 31, 500, 508, 514).

In discrediting the severity of Plaintiff's alleged subjective symptoms, the ALJ also noted that the administrative record contains little evidence of treatment from 2011 and that the one set of hospital records, from November 2011, that do exist consisted of a hospital stay "merely to qualify for a substance abuse treatment program." (Tr. 31, 517-28). Plaintiff challenges the ALJ's characterization of her hospitalization as merely for treatment program qualification. Review of the records at issue reveals the "history of present illness" states:

> The patient states she had gone to First Step for her opiate addiction: they have a bed, however, when they saw her legs and the amount of edema she had they were very concerned. The patient denies any kind of new onset shortness of breath, any worsening the lower extremity edema. She states it is chronic, has been ongoing and that whenever she is on pain pills this seems to be a problem, which is why she is actually at First Step.

(Tr. 519). Plaintiff cites this statement, arguing that it supports her contention that she was not motivated merely by the need to qualify for substance abuse treatment. However, the cited record itself belies her argument, as it notes that she stated her condition was chronic and had not worsened. Plaintiff makes no argument that she would have visited the hospital at that time for her condition had she not gone to First Step, and the emergency triage record states that her chief complaint was medical clearance. (Tr. 521). Moreover, Plaintiff does not describe any other treatment received for her conditions in 2011. Therefore, the ALJ did not err in stating that the record contains little evidence of treatment from 2011 or in considering Plaintiff's motivation for her limited treatment in 2011.

10

To the extent Plaintiff argues that the ALJ erred by failing to discuss Plaintiff's ability to pay for treatment,[7] this argument is unavailing.  An ALJ is required to determine, when relying on non-compliance as the sole ground for denial of disability, a claimant's ability to afford treatment when the record contains evidence demonstrating the claimant is unable to financially comply with the treatment prescribed.  *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (per curiam).  However, as described herein, noncompliance was only one of several factors considered by the ALJ in determining that Plaintiff was not disabled.

The ALJ additionally explained that Plaintiff's earning records show that she did not engage in substantial gainful activity for the two years preceding her alleged onset of disability, which "raise[d] some question as to whether the claimant's current lack of work activity is truly related to her medical condition." (Tr. 33, 274, 302).  However, although Plaintiff challenges the ALJ's consideration of her lack of work prior to her alleged onset date as "improper speculation," the ALJ may properly consider Plaintiff's lack of work leading up to her onset date. *See e.g.*, *Messer v. Colvin*, No. 8:13–CV–1242–T–TGW, 2014 WL 4639454, at *8 (M.D. Fla. Sept. 16, 2014) (where the ALJ stated "'the claimant worked only sporadically prior to the alleged disability onset date, which raises a question as to whether the claimant's continuing unemployment is actually due to medical impairments[,]' [t]he law judge could reasonably conclude that the plaintiff's work history undermines his allegation of inability to work due to disabling impairments."(transcript citation omitted)).

Moreover, the ALJ explained that Plaintiff's credibility was further eroded by her unresponsiveness, despite numerous attempts through letters and phone calls to further develop

---

[7] Plaintiff stated at the hearing that she could not afford the prescribed medications for the nebulizer or her hepatitis B. (Tr. 80-81).

11

the record, and that her unresponsiveness contributed to minimal evidence in the record and the lack of a consultative examination. (Tr. 29). And, the ALJ noted that the medical record does not demonstrate the onset of a new medical condition or the sudden worsening of any existing medical condition around Plaintiff's alleged onset date, which demonstrates her chosen onset date may be unrelated to her medical condition. (*Id.*).

The Court cannot reweigh the evidence as long as substantial evidence supports the ALJ's conclusions, as in this case. As the ALJ articulated reasons for not fully crediting Plaintiff's allegations and substantial evidence supports the ALJ's credibility determination, remand is not required.

### 3. **Alleged Bias**

Finally, Plaintiff argues that the ALJ's alleged mischaracterization and misreading of the record, "speculation, and animus toward the Plaintiff in the hearing decision, . . . suggests that the ALJ failed to prove a full and fair review of the case" (Doc. 22 at 19), requiring remand and rehearing.

A claimant in a social security case is entitled to a full and fair hearing that comports with due process, *see Lindsey v. Barnhart*, 161 F. App'x 862 (11th Cir. 2006); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996), in which the presiding ALJ must not be prejudiced or partial with respect to any party. *See* 20 C.F.R. § 404.940. The Social Security Act describes the proper procedure for a claimant to allege bias. If a claimant objects to the assigned administrative law judge, he "must notify the administrative law judge at the earliest opportunity;" the ALJ may then choose whether or not to withdraw. 20 C.F.R. § 404.940. If the ALJ does not withdraw, the claimant may raise the issue of bias before the Appeals Council. *Id.* If an ALJ makes objectionable comments in the ALJ's opinion, a claimant's earliest opportunity to object is before the Appeals

Council. *See, e.g.*, *Miles*, 84 F.3d at 1400. A plaintiff waives his claim of bias if he does not raise it as provided by 20 C.F.R. § 404.940. *Stokes v. Astrue*, No. 8:08-cv-1657-T-23HTS, 2009 WL 2216785, at *14 (M.D. Fla. July 23, 2009).

A presumption exists that an ALJ is unbiased, and a plaintiff challenging that presumption bears the burden of proving the existence of bias. *Gluchowski v. Comm'r of Soc. Sec.*, No. 8:13-cv-924-T-30MAP, 2014 WL 2916750, at * 5 (M.D. Fla. June 26, 2014) (citations omitted). "To be disqualifying, the alleged bias and prejudice 'must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case.'" *Borgens v. Halter*, 164 F. Supp. 2d 1309, 1329 (M.D. Fla. 2001) (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966)).

Plaintiff raised the issue of bias with the Appeals Council, which found the ALJ committed no abuse of discretion. (Tr. 5). Now, at the District Court level, Plaintiff again asserts that the ALJ was biased, pointing to the ALJ's alleged mischaracterizations, the ALJ's questioning of Plaintiff's motivation for claiming disability after two years without income, and the animus perceived by Plaintiff in a portion of the ALJ's opinion that stated, "despite the claimant's worst efforts, her condition appeared to be improving." (Tr. 30).

Upon review, Plaintiff has not met her burden of proving bias. As explained above, the ALJ properly weighed the medical opinions and properly evaluated Plaintiff's subjective complaints. Nor does the ALJ's comment regarding Plaintiff's efforts at complying with prescribed treatment lead the Court to conclude Plaintiff was deprived of due process. As described above, when analyzing the alleged severity of a plaintiff's subjective symptoms, the ALJ may properly consider the plaintiff's compliance with treatment as a factor. Moreover, the ALJ's statement does not reveal an opinion deriving from an extrajudicial source or reveal a degree of

antagonism that would make fair judgment impossible. *See Liteky v. United States*, 510 U.S. 540, 555 (1994) ("opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.").

Accordingly, remand is not required on this issue.

**IV.   CONCLUSION**

For these reasons, the decision of the Commissioner is supported by substantial evidence and does not contain reversible error.  The undersigned, therefore, recommends that the decision should be affirmed.  Accordingly and upon consideration, it is **RECOMMENDED** that:

(1)   the decision of the Commissioner be **AFFIRMED** and the case **DISMISSED**, with each party to bear its own costs and expenses; and

(2)   the Clerk of Court enter final judgment in favor of Defendant consistent with 42 U.S.C. §§ 405(g) and 1383(c)(3).

**Date:   January 5, 2017.**

*[signature: Amanda Arnold Sansone]*

AMANDA ARNOLD SANSONE
United States Magistrate Judge

## **NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal.  *See* 28 U.S.C. § 636(b)(1).


Copies to:
Counsel of Record
District Judge